IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FANNIE MACON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 3:21-CV-724-KFP ) |
| ALABAMA CVS PHARMACY, L.L.C., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Fannie Macon's Motion to Remand (Doc. 5). Upon consideration, it is ORDERED that the motion is GRANTED. Additionally, Defendant Alabama CVS Pharmacy, L.L.C.'s related Motions to Compel (Doc. 21, 29) are DENIED, as set forth below.

### I.  INTRODUCTION

Plaintiff alleges she was injured when the automatic door on Defendant's premises malfunctioned and slammed shut as she was entering the store, causing her to be pinned between two doors. Doc. 1-1 at 2. She brings claims of negligence, wantonness, and negligent hiring, training, and supervision, and she seeks unspecified compensatory and punitive damages for her "serious bodily injuries." *Id*. at 2–5. Defendant removed the case from the Circuit Court of Macon County based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). Doc. 1. Plaintiff then filed a Motion to Remand, arguing Defendant has not met its burden of establishing that the amount in controversy exceeds $75,000. *See* Doc. 5. Defendant opposed the motion and also moved the Court to allow

written discovery pertaining to the amount in controversy before the Court ruled on Plaintiff's motion to remand. Doc. 13 at 1. The Court granted that motion and allowed the limited discovery. Doc. 20. After Defendant failed to get the response it desired from the jurisdictional discovery, Defendant filed motions to compel seeking more thorough responses. Docs. 21, 29. Plaintiff opposed the motions but did supplement her discovery responses. Docs. 27, 32, 33.

## II.     STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and possess only the power authorized by the Constitution or statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Courts should presume that a case lies outside this limited jurisdiction, and the burden of establishing the contrary is on the party asserting jurisdiction. *Id.* Although a defendant has the statutory right to remove in certain situations, the plaintiff is still the master of his claim. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). For that reason, a defendant's right to remove and a plaintiff's right to choose his forum are "not on equal footing." *Id.* Accordingly, a defendant's removal burden is a heavy one. *Id.* If a plaintiff fails to make a specific demand for damages in the complaint, "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

When a defendant removes a case within the first thirty days after receipt of the initial complaint, a court considers both the initial complaint and other evidence introduced by the defendant. *See Sullins v. Moreland*, 511 F. Supp. 3d 1220, 1223–24 (M.D. Ala.

2021) (citing *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 753–754 (11th Cir. 2010)). A court may use "'deduction, inference, or other extrapolation' to determine whether the relevant evidence submitted by the removing party supports the existence of the required amount in controversy." *Sullins,* 511 F. Supp. 3d at 1224 (quoting *Pretka,* 608 F. 3d at 753). When a court is presented with a notice of removal without facts or specific allegations, "it may not speculate or divine 'by looking at the stars' the amount in controversy." *Id.* (quoting *Pretka,* 608 F.3d at 753).

## III. DISCUSSION

In seeking remand, Plaintiff argues that Defendant has failed to meet its burden of establishing that the amount in controversy exceeds $75,000 as required by 28 U.S.C § 1332. Doc. 5 at 4–8. The Complaint does not assert a specific amount of damages and asserts little about Plaintiff's injuries. Doc. 1-1. Plaintiff does seek both compensatory and punitive damages, but no monetary amounts are delineated. Doc. 1-1. Instead, Plaintiff vaguely alleges that she sustained "serious bodily injuries" warranting an award of "all compensatory damages and punitive damages." Doc. 1-1. Plaintiff's unadorned allegations of injury, therefore, are inadequate for determining whether the amount in controversy is above $75,000 based solely on the face of the Complaint. *See Williams v. Best Buy Co.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (holding in personal injury action that "it [was] not facially apparent from Williams' complaint that the amount in controversy exceed[ed] $75,000" where the plaintiff alleged that she suffered "permanent physical and mental injuries," "incurred substantial medical expenses, suffered lost wages," "experienced a diminished earning capacity," and sought "general damages, special damages, and punitive

3

damages in unspecified amounts"); *Goosby v. Briggs*, No. 2:20-CV-766-ECM, 2021 WL 298817, at *2 (M.D. Ala. Jan. 28, 2021) (Where the complaint does not describe the nature of Plaintiff's injuries or medical treatment, determining a "value would be an exercise in impermissible speculation." ) (citing *Piard v. VRP Transp., Inc.*, No. 3:18-CV-847-WKW, 2019 WL 210402, at *5 (M.D. Ala. Jan. 15, 2019)).

A. **Evidence Beyond the Complaint**

In an attempt to meet its burden to substantiate the jurisdictional amount, Defendant points to the following outside the Complaint:

- Plaintiff's medical records from September 2020 to April 2021, showing she suffered a wrist fracture (ulnar styloid fracture) and has documented pain complaints, including pain in her thumb, left upper arm, and left thigh;

- Plaintiff's gross medical bills totaling $8,870.65; and

- Plaintiff's July 2021 $650,000 settlement demand, which included statements that Plaintiff continued to suffer pain at that time (42 weeks after the event at issue).

Additionally, while Defendant acknowledges that Plaintiff does not mention a claim for mental anguish in the Complaint, Defendant urges the Court to infer a sufficient amount for that type of injury because Plaintiff mentioned both emotional distress and mental anguish in her settlement demand letter. Doc. 15 at 7. Defendant also points to Plaintiff's punitive damages allegation, which asserts that "Defendant consciously or deliberately engaged in wantonness . . . with reckless and conscious disregard for the rights and safety of Plaintiff and others" (Doc. 1-1, ¶ 19). Finally, Defendant points the Court to jury verdicts to support a measurement of damages greater than $75,000. Cobbling these things together, Defendant asks the Court to assess the value of Plaintiff's

4

claim as satisfying the jurisdictional amount.

The problem with doing so, however, is that it requires speculation. Plaintiff's attempt to evade a definitive valuation of her claims is no doubt frustrating to Defendant, and it, perhaps, borders on gamesmanship. Nevertheless, in order to unclock whether the amount in controversy is met to warrant federal court jurisdiction, the Court must consider what "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings" can be made to establish whether it is "more likely than not" the jurisdictional minimum is satisfied. *See Roe*, 613 F.3d at 1061–62, 1066. The Court must analyze the claims that are made, without speculating, to determine what is in controversy. *See e.g. Jones v. Rooks*, No. 1:20-CV-158-ECM, 2020 WL 1821456, at *3 (M.D. Ala. Apr. 10, 2020) ("'[W]ithout facts or specific allegations, the amount in controversy' can be determined 'only through speculation—and that is impermissible.'") (citing *Pretka*, 608 F. 3d at 753–54 (in turn citing *Lowery v. Ala. Power Co.*, 483 F. 3d 1184, 1209 (11th Cir. 2007)). As explained below, the Court cannot reasonably deduce here the amount in controversy is satisfied piecing together the limited medical bills for Plaintiff's non-severe or non-permanent injuries, the illusory settlement demand, and the unclear damages claims.

For example, the request for punitive damages does not demonstrate, either singularly or in combination with the Complaint's vague allegations, that the amount in controversy exceeds $75,000. "To be sure, plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendant[] ha[s] shown that the amount in controversy exceeds $75,000. But there is nothing talismanic about such a demand that

would per se satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Lambeth v. Peterbilt Motors Co.*, No. CIV.A. 12-0169-WS-N, 2012 WL 1712692, at *4 (S.D. Ala. May 15, 2012); *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.") (citing *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)). Under Alabama law, "[p]unitive damages are not awarded because the injured party is entitled to them as a matter of right; they are awarded as a punishment to the wrongdoer and to deter him and others in the same or similar situation from such wrongdoing in the future." *City Bank of Ala. v. Eskridge*, 521 So. 2d 931, 933 (Ala. 1988); *see also* Ala. Code § 6-11-20 (defining "wantonness," for purpose of punitive damages, as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). However, the value of Plaintiff's punitive damages cannot be ascertained without engaging in unbridled speculation. Plaintiff's Complaint provides a modicum of support for the claim with allegations more akin to formulaic recitations (e.g. Defendant acted "consciously or deliberately engaged in wantonness") than to specific examples of egregious or reprehensible conduct. *See Roe*, 613 F.3d at 1065 (stating that, in assessing punitive damages under Alabama law, "the worse the defendant's conduct was, the greater the damages should be"); *Arrington v. State Farm Ins. Co.*, No. 2:14CV209-CSC, 2014 WL 2961104, at *7 (M.D. Ala. July 1, 2014) ("'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'") (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). Tellingly, while boasting

6

about the potential of filing suit in "one of Alabama's most plaintiff-friendly venues[,]" Plaintiff's counsel did not reference punitive damages in the settlement demand, suggesting, perhaps, that it is not a significant aspect of Plaintiff's damages. *See Dean v. Sears, Roebuck & Co.*, No. CA 13-00487-C, 2014 WL 900723, at *6 (S.D. Ala. Mar. 7, 2014) ("It is telling that, in the Plaintiff's demand letter, she did not attempt to bolster her punitive damages claim or refer to it in any way. Had her punitive damages claim constituted a significant part of her damages, she likely would have mentioned it.") (internal record citation omitted); *see also Capps v. Winn-Dixie Stores, Inc.*, No. 319CV00571ALBSMD, 2019 WL 5688148 (M.D. Ala. Nov. 1, 2019) (declining to accept defendant's argument that "based on Plaintiff's December 21, 2018 demand letter [for $75,000, which projected a 10x multiplier by a jury in the subject county], the Court should apply a 'ten times multiplier' to Plaintiff's medical expenses [of only $7,823.75]" to satisfy the jurisdictional minimum). On the record before the Court, there is no reasonable way for the Court to value the punitive damages at issue.

Similarly, while the six-figure settlement demand is instructive and entitled to some weight, Courts in this district have pointed out that settlement demands of this nature are often unhelpful puffery and are not revealing of potential value. *Davis v. Ray*, No. 2:19-CV-932-WKW, 2020 WL 1916170, at *2 (M.D. Ala. Apr. 20, 2020) (finding similar six-figure demand letter "does not tip the preponderance-of-the-evidence scales" in favor of sufficient amount in controversy for federal jurisdiction) (citing *Katz v. J.C. Penney Corp.*, No. 09-CV-60067, 2009 WL 1532129, at *4 (S.D. Fla. June 1, 2009) ("[A] district court may consider evidence outside of the removal petition if the facts therein existed at

the time of removal," including "pre-suit settlement offers and demands") (citations omitted)).

> A settlement demand letter, "by itself, may not be determinative" of the amount in controversy, but "it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). "In determining what that 'something' is, courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other." *Montreuil as Next Friend of Z.M. v. Costco Wholesale Corp.*, No. 2:18CV706-MHT, 2020 WL 1243383, at *1 (M.D. Ala. Mar. 13, 2020) (citation and internal quotation marks omitted). A settlement demand adds monetary weight to the amount in controversy "when it provides enough specific information to support the plaintiff's claim for damages to indicate that the offer is a reasonable assessment of the value of the plaintiff's claim." *Simpson v. Primerica Life Ins., Co.*, No. 2:15-CV-777-WKW-PWG, 2015 WL 9315658, at *9 (M.D. Ala. Dec. 3, 2015) (citation omitted), *report and recommendation adopted*, 2:15-CV-777-WKW-PWG, 2015 WL 9413876 (M.D. Ala. Dec. 22, 2015).

Plaintiff's settlement demand appears to be a far cry from an "offer [that] is a reasonable assessment of the value of the [P]laintiff's claim." The demand itemizes Plaintiff's gross medical expenses ($8,870.65), but Plaintiff provides little basis for the seemingly inflated demand. To support the large demand, Plaintiff highlights her ulnar styloid fracture and her related physical therapy. While the letter describes some injections Plaintiff required to alleviate pain, it offers little other description as to the scope of the injuries or required treatment. Plaintiff provides in the letter essentially no specifics about the more generic leg, head, back, shoulder, arm, thumb, and feet pain she claims. Therefore, the letter does little to further Defendant's burden to establish jurisdiction. *See Mitchell v. Pruitt*, No. 2:17-CV-386-WKW-WC, 2017 WL 4533340 (M.D. Ala. Sept. 12, 2017), *report and recommendation adopted,* No. 2:17-CV-386-WKW, 2017 WL 4533132

(M.D. Ala. Oct. 10, 2017) (finding settlement offer for $125,000 appeared to be "little more than pre-suit puffering and posturing" and was "entitled to little weight in determining the amount in controversy" where "the only dollar amount specified, other than the total amount of the demand, [was] Plaintiff's gross medical expenses of $10,269.99").

In the letter, Plaintiff also broadly claims "pain and suffering, emotional distress, and mental anguish," but there is a dearth of factual support for that generalized assertion. Plaintiff asserts no permanent, severe injury. Indeed, her medical expenses are relatively minor. Based on the medical records, at least as of April 2021, Plaintiff had been released from medical treatment. *See* Doc. 14 at 6. She alleges no resulting impact on the ability to work, no financial loss, no depression, and no apparent severe damages as a result of her injury. The demand letter simply does not contain a non-speculative, reasonable estimate of the value of Plaintiff's case upon which the Court can rely in assessing the amount in controversy. *See Davis*, 2020 WL 1916170, at *3 (noting that "Those cases in which the court has found that a written demand letter contains a non-speculative, reasonable estimate of the value of the plaintiff's case underscore the deficiencies in Davis's demand letter for purposes of meeting Ray's burden on removal.") (citing *Benandi v. Mediacom Se., LLC*, No. CIV.A. 11-00498-CG-N, 2011 WL 5077403 (S.D. Ala. Sept. 30, 2011), *report and recommendation adopted,* No. CIV.A. 11-00498-CG-N, 2011 WL 5077108 (S.D. Ala. Oct. 24, 2011) ($92,000 demand letter described the multiple injuries to the plaintiff's leg, arm, back, and shoulder; itemized the medical charges; and provided a "conservative estimate" of the cost of anticipated surgery and

9

postoperative care); *Johnson-Lang v. Fam. Dollar Stores of Fla., LLC*, No. 8:21-CV-902-VMC-CPT, 2021 WL 1625167, at *1 (M.D. Fla. Apr. 27, 2021) (remanding finding too speculative to meet the jurisdictional threshold evidence of pre-suit demand letter for $225,000 with past medical expenses of $30,274.24, allegations of "permanent or continuing . . . bodily injury," medical provider's opinion that plaintiff future treatment, and demand letter's estimate of up to $40,000 in future medical expenses). The six-figure settlement demand appears to be in another stratosphere based on the actual gross medicals of just $8,870.65 and the documented, but relatively minor, medical treatment. The Court can no more value Plaintiff's claims at $12,000 than it can at $650,000. On either end of that spectrum, the extrapolated figure is based on a guess. And, doubts about "jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).

Finally, Defendant has done a thorough job of collecting jury verdicts. While jury verdicts might be informative to a degree, it is unclear that Defendant's references to the various verdicts can constitute evidence of the value of Plaintiff's claims, to any degree, much less sufficiently enough to carry Defendant's burden to establish that jurisdiction exists in these circumstances where the claimed damage is so vague. *See Kumi v. Costco Wholesale Corp.*, No. 2:19CV442-MHT, 2019 WL 6359151, at *2 (M.D. Ala. Nov. 27, 2019) ("Assuming such [jury verdict] references constitute evidence, the court lacks sufficient information about the cited cases—and the current case—to draw any reasonable conclusions about the case before the court.") (citing *Lowery*, 483 F.3d at 1221 (finding defendant's references to recent jury verdicts in support of removal "in no way

clarifies" the value of claims before the court, because "with a record bereft of detail" the court could not "possibly ascertain how similar the current action is to those the defendants cite")). The verdicts Defendant cites appear to have come from cases mostly involving different types of claims[1] and different injuries[2] and are, therefore, not sufficiently comparable to warrant equating the jury's valuation of a different type of injury with the wrist fracture and other vague pain or injury here. Using the verdicts in that way would require the Court to make an impermissible leap supported by speculation, not sense. *See Arrington v. State Farm Ins. Co.*, No. 2:14CV209-CSC, 2014 WL 2961104, at *6 (M.D. Ala. July 1, 2014) ("Judicial experience and common sense are useless for making reasonable deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate. A reasonable inference is not a suspicion or a guess.") (citation and internal quotations omitted).

The closet verdict to which Defendant cites arises from a premises liability case involving a plaintiff who fractured her wrist when she slipped and fell on a wet floor at a fast-food restaurant in 2002. *See* Doc. 14 at 85. That plaintiff was awarded $350,000: $175,000 in compensatory and $175,000 in punitive damages. The jury sat in Blount County, not Macon County where this case arose. Additionally, the injury to that plaintiff involved a comminuted fracture requiring an open reduction surgery. Here, however,

---

[1] *See, e.g.*, Doc. 14 at 69-71 (verdicts in vehicle accident cases).
[2] *See, e.g.* Doc. 14 at 72 (verdict in slip and fall involving multiple spinal injuries requiring neck surgeries); 73 (verdict in case involving slip and fall injuries to back requiring laminectomy surgery); 75 (slip and fall causing bulging disc); 77 (slip and fall causing severe rotator cuff injury); 78 (slip and fall badly broken leg); 79 (fall causing broken hip); 81 (slip and fall ankle fracture); 82 (slip and fall causing concussion and vertigo).

Plaintiff's injuries do not appear as severe. In fact, Plaintiff's medical records suggest, all things considered, her injuries from becoming "squished" in the CVS doors are not severe, albeit painful and at times requiring pain medication. *See* Doc. 14 at 12, Ex. B. Plaintiff's injuries, for example, were not severe enough to have required any emergency response. After she became stuck in the doors, she left the store and went home. Doc. 14 at 5, Ex. A, Settlement Demand Letter. While Plaintiff suffered an ulnar styloid fracture, which was discovered almost two weeks after the incident, she required no surgery and just two months of physical therapy. *See id.*; *see also* Doc. 14 at 5, 40. Moreover, Plaintiff's treating physician released her to return to activities as tolerated on April 19, 2021. Doc. 14 at 6, 61. This case involves injuries without a surgical or emergent response from an automatic door entrapment. There is insufficient information available from the verdicts to extract from them an amount in controversy here.

**B.  Jurisdictional Discovery**

The Court granted Defendant's motion for jurisdictional discovery (Doc. 20) and allowed Defendant to serve limited requests.[3] Plaintiff responded to the requests for

---

[3] Post-removal jurisdictional discovery remains debatable. Courts in this district, in limited circumstances, have allowed jurisdictional discovery. *See Goosby v. Briggs*, No. 2:20-CV-766-ECM, 2021 WL 298817, at *2 (M.D. Ala. Jan. 28, 2021) ("Upon review of the record, however, the Court concludes that the Defendants have shown enough through the allegations of the complaint, particularly the allegation of "serious bodily injuries," to justify post-removal discovery.") (citing *Piard v. VRP Transp., Inc*., No. 3:18-CV-847-WKW, 2019 WL 210402, at *5 (M.D. Ala. Jan. 15, 2019) ("Although not required, in its discretion, the court will grant Defendants' request to conduct discovery on the amount in controversy prior to ruling on the motion to remand."); *Pitts v. Ram Partners, L.L.C*., No. 3:18-CV-00028-SRW, 2018 WL 5786219, at *8 (M.D. Ala. Nov. 5, 2018) (permitting defendant to conduct limited discovery to show that jurisdiction exists in this case.); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014) (indicating in a Class Action Fairness Act removal that a district court may permit

admission and interrogatory with less than enlightening responses. Plaintiff's responses to requests for admission as to whether she intends to ask a jury for more than $75,000 in compensatory and punitive damages, and whether she admits that at trial she will not seek more than $75,000 in damages, avoided the issue based on the status of the litigation: "Plaintiff is unable to admit or deny this Request as discovery is in its infancy." *See* Doc. 21 at 2. Also unilluminating is Plaintiff's response to Interrogatory 1, which requested the total amount of compensatory damages she seeks. Initially, Plaintiff's response included the following objections: "Plaintiff objects to this Interrogatory to the extent that

---

post-removal discovery and make jurisdictional findings under the preponderance-of- evidence standard when the amount in controversy is in dispute after removal) (in turn citing H.R. REP. 112-10, 16 (2011)); *but see Watkins v. Angels Trucking Servs., LLC*, No. CV 20-0505-WS-MU, 2020 WL 7055496, at *3 (S.D. Ala. Dec. 2, 2020) ("As a fallback position, Angels Trucking requests an opportunity to take discovery on plaintiff's damages while the case remains in federal court and to supplement its jurisdictional showing thereafter. Simply put, [t]his is not permitted.'") (citation omitted); *Accelerated Tech. Servs. Grp., LLC v. AT&T Corp.*, No. CV 20-0342-WS-MU, 2020 WL 4018281, at *2 (S.D. Ala. July 16, 2020) (denying request for jurisdictional discovery and citing *Lowery*, "'The defendants' request for discovery is tantamount to an admission that the defendants do not have a factual basis for believing that jurisdiction exists. The natural consequence of such an admission is remand to state court.'"); *Beasley v. Fred's Inc.*, No. CIV.A. 08-0130-WSC, 2008 WL 899249, at *2 (S.D. Ala. Mar. 31, 2008) (holding "post-removal discovery in order to establish the amount in controversy is impermissible."); *Palmer v. AmeriQuest, Inc*., No. 2:07-CV-1172-RDP, 2008 WL 11423902, at *3 (N.D. Ala. Feb. 29, 2008) ("Post-removal discovery . . . cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy assumptions that flow from and underlie them. Certainly, the power to grant discovery generally is conferred to the sound discretion of the district court, and post-removal jurisdictional discovery may appear to present a viable option for a court examining its jurisdiction. Jurisdictional discovery could avoid the problem of speculation by the court. Sound policy and notions of judicial economy and fairness, however, dictate that we not follow this course. . . . *Sierminski* [v. *Transouth Fin. Corp.*, 216 F.3d 945 (11th Cir. 2000)], does not require that courts order jurisdictional discovery; it merely allows courts to consider evidence gleaned from discovery. On the other hand, *Lowery* appears to prohibit a court from ordering discovery, but, consistent with *Sierminski*, does not preclude a court from considering evidence produced in discovery in state court prior to removal. *Sierminski* addresses this court's discretion to invite or consider jurisdictional discovery; *Lowery* addresses this court's power to order jurisdictional discovery.").

discovery is in the infancy stage, and the extent of damages cannot be determined at this phase of the litigation [and] it attempts to require Plaintiff to speculate on the course of future discovery, medical treatment and her damages amount." Doc. 29 at 2. Plaintiff then supplemented her response adding that because of her insurance coverage, "[t]he total amount paid for . . . treatment is an unknown number **less than** $8,870.65. . . . I am not seeking lost wages. . . . if forced to speculate, I would say that compensatory damages for the period of September 23, 2020 to October 28, 2021 would be approximately $10,000." Doc. 32 at 1–2 (emphasis in original).

Plaintiff's responses appear cleverly crafted based on her current knowledge and intent to preserve her ability to supplement the answers after further discovery allows adequate evaluation of the nature and extent of her injuries and associated damages. Similar to a plaintiff's unwillingness to stipulate to a specific threshold amount in controversy, the Court cannot hold against Plaintiff her inability to answer the discovery with Defendant's desired specificity as to what she claims she does not now know.[4] *See Dunlap v. Cockrell*, 336 F. Supp. 3d 1364, 1368 (S.D. Ala. 2018) (noting "that a plaintiff's refusal to stipulate to amount in controversy (or its denial of requests for admission as to

---

[4] In her supplemental response to the motion to compel, Plaintiff provides that she "made reasonable inquiry in an effort to ascertain damages, however, the information she knows or can readily obtain is insufficient to enable her to admit or deny" the requests for admission. Doc. 33. Therefore, Plaintiff's responses satisfy the directives of Federal Rule of Civil Procedure 36 and are procedurally sufficient, at this time. *See* Fed. R. Civ. P. 36(a) (requiring party claiming lack of information to state that it "has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny"). The interrogatory response, as supplemented at this early stage of litigation is similarly sufficient enough at this time to withstand a motion to compel with the expectation that Plaintiff will provide the necessary supplementation to these responses required by the Rules when it becomes available. Thus, Defendant's Motions to Compel are due to be denied. Doc. 21, 29.

amount in controversy), without more, does not satisfy that burden because there are several reasons why a plaintiff would not so stipulate"). The discovery responses provide no support for the Court to consider the amount in controversy satisfied. "All told, the court has before it little evidence from which it can determine the amount in controversy, and what little it does have leaves it with great doubt." *Kumi*, 2019 WL 6359151, at *2.

Upon review of the record, the Court, therefore, concludes that Defendant has not proven by the preponderance of the evidence that the jurisdictional amount in controversy is met.

### IV.   CONCLUSION

Accordingly, it is ORDERED as follows:

1. Defendant's Motions to Compel (Doc. 21, 29) are DENIED;

2. Plaintiff's Motion to Remand (Doc. 5) is GRANTED;

3. Defendant's pending Motion to Dismiss/Alternatively Motion for More Definite Statement (Doc. 7) is DENIED as moot;

4. This action is REMANDED to the Circuit Court of Macon County, Alabama; and

5. The Clerk of the Court is DIRECTED to take all appropriate steps to effectuate the remand.

Done this 15th day of April, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE